354 S.E.2d 613

**STATE of West Virginia**

v.

**Donna Sue LUSK.**

No. 16946.

Supreme Court of Appeals of
West Virginia.

Feb. 27, 1987.

Bethany R. Boyd, Asst. Atty. Gen., Charleston, for appellant.

David Burton, Stephen B. Goad, Burton & Goad, Princeton, for appellee.

BROTHERTON, Justice:

This is an appeal by Donna Sue Lusk challenging a jury verdict in the Circuit Court of Mercer County, West Virginia, of murder in the second degree. She was sentenced to the penitentiary for five-to-eighteen years.

Mrs. Lusk has been married three times. Her first husband was killed in a mining accident six weeks after they were married. Her second marriage was annulled. Her third marriage ended when she shot her husband of thirteen years. Mrs. Lusk graduated from high school with good grades. She has worked as a car hop and as a cashier in the past. However, she gave up these jobs to care for her children. At the time of the shooting she was thirty-three years of age and had two children, ages twelve and eleven.

Mrs. Lusk lived with her two children in Mercer County. She and her husband were in the process of getting a divorce. On the day of the shooting, Mr. Lusk had taken the two children to Knoxville, Tennessee, to the World's Fair, and Mrs. Lusk was at home waiting for them to return. When Mr. Lusk returned, he let the children out of the car and Mrs. Lusk asked him to help take the children's clothes into the house. He refused and would carry them only as far as the porch. She then asked him to come into the house and sit down and talk with her, telling him that she needed more money, and that she and the children could not live on the money he was giving her. He told her that he had to go and started walking toward his car. She ran into the house and returned with a .38 caliber revolver. She held the pistol on him and took his wallet and removed $277.00 and some credit cards. She asked him again to come into the house and talk to her. He refused and started walking toward his car, which was parked nearby with the motor running. She ran to the car and removed the ignition key, while still holding the gun on him. She began walking toward him, and the gun went off. The bullet struck him under the arm and killed him instantly.

Mrs. Lusk ran into the house and called the Princeton Rescue Squad, saying "I shot—my husband's been shot." She identified herself as Donna Lusk. When police and the rescue squad arrived, she told the officers "I accidently shot him." She was then immediately read her rights and asked why she shot her husband. She replied, "I shot him." She retrieved a .38 caliber revolver from the nightstand by the couch. The gun had one empty chamber, one fired chamber, and four loaded chambers.

At trial Mrs. Lusk's oldest son said that he saw the incident, and that his mother was trying to uncock the gun when it went off. Nevertheless, on the day of the shooting, he told the investigating officer that he had not seen anything. His story then was that he and his brother were upstairs playing with a small dog when they heard a gunshot.

I.

▮ Before trial the defense moved for a bifurcated trial pursuant to *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981). Under *Boyd* the defendant is entitled to a bifurcated trial on the issues of insanity

and another defense if (1) there is evidence showing a substantial defense on both issues, and (2) the defendant would be prejudiced by a unitary trial. *See* 280 S.E.2d at 676. The trial court refused the motion, saying that it is not inconsistent for insane people to have accidents. We agree. It is entirely consistent that an insane person would have an accident. The two defenses would not undermine each other. In fact, an insane person would probably be more likely to have an accident than someone in full control of his or her emotions.

 "The right to a bifurcated trial lies within the sound discretion of the trial court." Syl. pt. 3, *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977). Because the defendant was not prejudiced by being forced to try her two defenses together, *Boyd* does not apply and the trial court did not abuse its discretion in refusing the bifurcation motion.[1]

## II.

 Mrs. Lusk also assigns as error two instances of alleged prosecutorial misconduct. The first is in exceeding the scope of direct examination during rebuttal testimony. The rebuttal testimony was by a neighbor who stated that he had seen Mrs. Lusk fire a gun in the direction of Mr. Lusk on one occasion. The description of the incident went on for several pages before there was an objection. At the objection, the judge struck the entire line of testimony and instructed the jury to disregard it. "Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error." Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). We see no reason to deviate from this rule in this case. The jury was instructed to disregard the testimony, and we presume that it did. Any error was cured.

 The other instance of alleged prosecutorial misconduct was where the prosecutor made the following statement in closing argument:

Now, I submit to you ladies and gentlemen, that we cannot, as stated earlier, we cannot give a recap or an instant replay of what happened because there were only three people that supposedly saw it. One we know saw it and that was the defendant because she fired the gun. And the second one we know was there was Archie Lee Lusk, Jr., and he cannot testify because he's dead. The boy at first said, "No, I did not see it." Now, today, he says, "I saw it. I watched it."

The defendant claims that this was an improper reference to her failure to testify.

The statement by the prosecuting attorney came close to being a comment on the accused's failure to testify. Nevertheless, the comment did not reach that point. Instead, we find the statement similar to statements by the prosecution that the evidence was "uncontradicted," where the accused alone could have controverted the officer's testimony. In *State v. Clark*, 170 W.Va. 224, 292 S.E.2d 643, 646–48 (1982), we examined this situation and held that an isolated comment by the prosecutor which did not specifically and directly refer to the accused's failure to testify and when read in context was not manifestly intended to be, nor was it of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify, would not constitute reversible error. *See* 292 S.E.2d at 647–48. Read in context, the jury would not naturally take the prosecutor's statement in this case to be a comment on Mrs. Lusk's failure to testify. Therefore, we find no error in the statement.

## III.

 In a true spirit of advocacy, counsel for Mrs. Lusk argued that he was ineffec-

---

**1.** There was some concern by trial counsel for Mrs. Lusk that if he put on defenses of both the issue of insanity and accident that he would waive his objection to the court's ruling on the bifurcation motion. This is not correct. An objection to the court's ruling denying the de-

fendant's bifurcation motion, if timely made and made part of the record, will preserve an error for appeal and counsel is free to then try the case in accordance with the court's ruling without fear of waiving his objection.

tive at trial. He points in particular to his late objection on the rebuttal testimony. We admire counsel's persistence in representing his client even at the risk of losing face. We must, however, disagree with his contention that he was ineffective at trial. One small mistake does not make a counsel ineffective. The mistake in this case was only of timing. Counsel eventually objected, the testimony was stricken from the record, and the jury was instructed to disregard it. "Due process of law does not require that every criminal case be prosecuted by a Thomas Dewey, defended by a Clarence Darrow, and tried before a John Marshall." *Acord v. Hedrick,* 176 W.Va. 154, 342 S.E.2d 120, 123 (1986). On the whole Mrs. Lusk's attorney was competent and defended her well. Mrs. Lusk was not entitled to perfect assistance of counsel,[2] but "reasonably effective assistance" of counsel. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Mrs. Lusk's trial counsel easily met this standard.[3]

Because there is no error appearing on the record which merits reversal, the judgment of the Circuit Court of Mercer County is affirmed.

Affirmed.

**2.** If we reversed every case where defense counsel made an error, human beings being what they are, we would reverse every case.

**3.** We also dismiss without discussion Mrs. Lusk's claim that she was incompetent to stand trial. There was adequate evidence in the record to support the trial court's finding that she was competent.