# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-0728** (Hancock County 13-F-136 and 11-F-45)

**Delbert R.,**
**Defendant Below, Petitioner**

**FILED**

June 22, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Delbert R.,[1] by counsel James T. Carey, appeals his conviction in the Circuit Court of Hancock County of sexual abuse by a custodian in violation of West Virginia Code § 61-8D-5 and sexual assault in the first degree in violation of West Virginia Code § 61-8D-5, and the subsequent denial of his post-judgment motion for acquittal or, in the alternative for a new trial, all described in the sentencing order entered on June 24, 2014. He also appeals the revocation of his earlier-ordered probation based on the conduct giving rise to these convictions, also described in the aforementioned sentencing order. Respondent State of West Virginia appears by counsel Julie A. Warren.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

In February of 2011, petitioner pled "no contest" to an information charging him with unlawful assault (Circuit Court Docket No. 11-F-45). Pursuant to petitioner's agreement with the State, the circuit court held the plea in abeyance and deferred acceptance as long as petitioner complied with a three-year period of probation. The agreement provided that if petitioner's probationary period was successful, he would be allowed to withdraw his plea and instead enter a plea to the lesser-included misdemeanor offense of battery. Any violation of the terms would nullify that benefit. Petitioner's probationary period began in February of 2011 and extended into February of 2014.

---

[1] Consistent with our practice in cases involving sensitive matters, we use initials to protect the identity of the child victims in this case. See W.Va. RA.P. 40(e)(1); *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

In the midst of his probationary period, in September of 2013, petitioner was indicted on three counts of sexual abuse by a custodian and two counts of sexual assault in the first degree. Subsequent to the issuance of the indictment, the Hancock County Adult Probation Office filed a petition for revocation of petitioner's probation. The circuit court conducted a hearing on the petition for revocation on March 26, 2014, and ultimately revoked petitioner's probation by order entered on May 19, 2014.

Petitioner filed a motion to sever the charges of the indictment, which related to different victims. The court granted his motion, severing Counts One and Two from Counts Three through Five. The State dismissed Count Three after receiving information that the victim identified in that count, J.M., would not testify, and the parties proceeded to trial on Counts Four and Five (charging petitioner with sexual abuse in the first degree and sexual abuse by a custodian, both involving the same minor victim, W.O.). Evidence adduced at trial included W.O.'s testimony that petitioner touched her breasts more than twenty times from April of 2010 through October of 2010. She further testified that in the summer of 2012, when she was about twelve years old, petitioner touched her vaginal area, through her clothes, during a car ride. Petitioner's daughter, Katrina R., who was present on that occasion, testified and confirmed W.O.'s characterization of this event. The testimony reflected that petitioner also exposed his penis to W.O. that summer. A mental health counselor testified that she treated W.O. because of the abuse. Through the investigating officer, the State moved W.O.'s birth certificate into evidence, establishing her age. The State also moved petitioner's birth certificate into evidence without objection, showing that he was born in 1965.

Prior to trial, the State sought clarification about a circuit court ruling concerning the potential testimony of petitioner's brother, Gerald R., inasmuch as it was understood that Gerald R.'s granddaughter, J.M. (the victim described in the dismissed Count 3), had reported to him that petitioner sexually abused her. The court instructed that Gerald R. could explain that he contacted petitioner as a result of things said by J.M., but that he could not specify the allegation. Nevertheless, while testifying, Gerald R. stated that petitioner sought a sleepover or birthday party with J.M., but that J.M. "was scared, she was crying" and did not want to go to petitioner's home because "when she stayed there the last time [petitioner] put her in the middle between his daughter, that she was sleeping with, and [petitioner] and put her hand on his penis." Petitioner's counsel objected, and Gerald R. was admonished by the court not to mention that incident again. The circuit court then instructed the jury, "You're not to consider that as part of the evidence."

Upon the jury's finding of guilt, petitioner moved for acquittal or a new trial based on his allegations that the State made late disclosures of potential witnesses and evidence and further failed to timely disclose W.O.'s mental health treatment records, and that the circuit court failed to sua sponte declare a mistrial upon the testimony of Gerald R. The court denied these motions. Petitioner was sentenced to serve five to twenty-five years in the state penitentiary on the first-degree sexual abuse conviction, ten to twenty years for the sexual abuse by a custodian conviction, and one to five years for the prior unlawful assault conviction. This appeal followed.

II.

2

On appeal, petitioner presents five assignments of error: that (1) the question of whether he was eighteen years old—a prerequisite to sentencing pursuant to West Virginia Code § 61-8B-3(c)—was never presented to the jury; (2) the circuit court allowed the State to introduce testimony and evidence, though the State had not timely filed disclosures; (3) the circuit court failed to prohibit the State from introducing the testimony of the victim, W.O., or of W.O.'s counselor, where the State failed to timely disclose W.O.'s mental health treatment records; (4) the circuit court failed to declare a mistrial after a witness, petitioner's brother Gerald R., testified that petitioner had sexually abused Gerald R.'s granddaughter; and (5) the circuit court improperly revoked petitioner's probation based on acts that were not alleged in the petition to revoke probation. We review the denial of a motion for a judgment of acquittal or, in the alternative, for a new trial as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). Other applicable standards of review will be discussed below, as necessary.

III.

We begin our review with petitioner's first assignment of error, in which he argues that the question of whether he was eighteen years old was never presented to the jury, though the finding of his age is a mandatory element for the penalty he received under West Virginia Code § 61-8B-3(c).[2] That code section, defining the offense of sexual assault in the first degree, provides in pertinent part:

> (c) Notwithstanding the provisions of subsection (b) of this section, the penalty for any person violating the provisions of subsection (a) of this section who is eighteen years of age or older and whose victim is younger than twelve years of age, shall be imprisonment in a state correctional facility for not less than twenty-

---

[2] In a case touching on the issues before us, we explained that "[t]he exact age of the defendant is not an essential element of the crime of . . . sexual assault." *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982)(evaluating claim that State failed to prove defendant's exact age in prosecuting offense of third-degree sexual assault under West Virginia Code § 61-8B-5). We held in *Richey* that "[w]here the exact age is not required to be proved, the defendant's physical appearance may be considered by the jury in determining age but there must be some additional evidence suggesting the defendant's age." Syl. Pt. 6, *id*. at 345, 298 S.E.2d 879 at 882. Thus, the issue before us does not affect the validity of the underlying conviction, but only the validity of the sentence.

3

five nor more than one hundred years and a fine of not less than five thousand dollars nor more than twenty-five thousand dollars.

W.Va. Code § 61-8B-3(c) (2014).

Petitioner argues that he "is entitled to a jury determination of any aggravating factor that will automatically result in an enhancement of his sentence." *See* Syl., *Apprendi v. New Jersey*, 530 U.S. 466, 466, 120 S.Ct. 2348, 2350, 147 L. Ed. 2d 435 (2000)("The Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt"). In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court further defined statutory maximum as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303, 124 S.Ct. at 2537 (emphasis supplied).

In the case before us, petitioner's birth certificate was submitted into evidence without objection. The charge to the jury, filed with the circuit clerk's office on May 6, 2014, reflects that the circuit court judge informed the jury that, for a conviction of sexual abuse in the first degree, it must find, inter alia, that "at the time of the sexual contact [petitioner was fourteen] years of age or older and [W.O.] was less than twelve years of age." We further note that the State's attorney, in closing argument, stated:

> The other element that we have to prove, which is not in dispute here, is that at the time that the incident occurred, [petitioner] must have been [fourteen] years of age, all right. And we brought in and we'll take—it's been admitted as part of the evidence in this case—and there's also been testimony in regard to it. *But there's a birth certificate for petitioner and it indicates that [petitioner's] date of birth is [in] 1965. So at the time that this incident occurred [petitioner] was [forty-five] years old.* There's no question that a 45-year-old is older than [fourteen].

(Emphasis supplied.) Petitioner's trial counsel did not refute the State's evidence or position regarding petitioner's age.

Petitioner has never disputed that his year of birth is 1965, and documentary evidence submitted to the jury supports this fact.[3] In short, the undisputed evidence establishes that petitioner's age fulfills the statutory requirement for the punishment set forth in West Virginia Code § 61-8B-3(c). Without question, petitioner was over the age of eighteen at the time of the commission of the crime, and the jury was privy to information proving as much. Moreover, petitioner would not have been aided by a more clear instruction requiring the jury to find that he was eighteen years or older; his lawyer could not have argued in the face of the birth certificate

---

[3] At the time of trial, petitioner was nearly fifty years old. As we stated in *State v. Lowery*, 222 W. Va. 284, 289, 664 S.E.2d 169, 174 (2008), "[t]he jurors would have seen the same 'physical evidence' as did the State's counsel and the judge, and could have likewise concluded the same."

4

evidence that he was under the age of eighteen, and no jury could have found that he was under the age of eighteen. We conclude that the omitted age "element" was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the omission. Thus, the error in the lack of instruction, if any, is harmless beyond a reasonable doubt.

IV.

In his second and third assignments of error, petitioner argues that he was prejudiced by the introduction of evidence that was not timely disclosed. This Court has explained that it affords great deference to evidentiary rulings made by a circuit court.

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds*, *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999). Stated another way:

> "The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard." Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 9, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002).

Petitioner's argument with respect to his second assignment of error is that the circuit court should have granted his motion in limine to exclude any witnesses listed in the State's fourth, fifth, or seventh supplementary discovery responses. The fourth supplementary disclosure, filed on April 23, 2014, included four witnesses not previously identified: Gerald R., Amanda R. (petitioner's daughter), Brenda Jackson, and Peggy M. (W.O.'s mother).[4] The fifth supplemental disclosure, filed the following day, included the criminal histories (if any) for several of the State's witnesses, including these individuals. The seventh supplemental disclosure, filed on April 30, 2014, listed only witness J.M., the victim named in Count 3 of the original indictment. Trial commenced on May 5, 2014.

---

[4] Gerald R. testified, in part, as described above. Amanda R. testified that, while staying at her father's home, her father asked her to provide him with an alibi for a particular occasion that someone made an allegation against him. Peggy M., W.O.'s mother, testified that petitioner was her "best friend" for approximately fifteen years, and that W.O. and Katrina R. were best friends. She further testified that a friend of W.O. reported to her that W.O. "was being touched inappropriately by [petitioner]." There is no indication in the appendix record on appeal that Brenda Jackson testified.

J.M. did not testify, and the timing of the seventh supplemental disclosure thus has no bearing on this issue. Petitioner has made no effort to explain the identity of Brenda Jackson or to suggest how her testimony may have been prejudicial. With respect to the remaining witnesses in the fourth supplemental disclosure, as well as the attendant fifth supplemental disclosure regarding those witnesses' criminal histories (if any), we agree with the finding made by the circuit court in denying petitioner's motion for judgment of acquittal or for a new trial that "all the people who were going to testify were known." Peggy M., for example, was the person who first reported the abuse of her daughter to the police, and petitioner was aware that Amanda R., his daughter, had twice been interviewed by the police in the course of the investigation. More importantly, both of these women were disclosed by petitioner as witnesses. Furthermore, Gerald R. was identified by a witness at the probation revocation hearing, conducted more than one month prior to trial, as having initiated a telephone call concerning an allegation of petitioner's abuse of J.M.

In his third assignment of error, petitioner argues that the circuit court erred in permitting testimony from W.O. and W.O.'s counselor because W.O.'s mental health treatment records were not disclosed. The treatment records for W.O.'s mental health provider were disclosed on April 29, 2014, approximately one week prior to trial. As with the witness lists described in petitioner's second assignment of error, we agree with the circuit court that the late disclosure of the treatment records was not prejudicial. As the circuit court explained, the State made "minimal" use of the records and W.O. was "forthright" on cross-examination. Critical to our review, the State filed proposed jury voir dire on April 7, 2014, naming the counselor as a potential witness. We find that petitioner was not prejudiced by the timing of the disclosures described in his second or third assignments of error.

V.

We turn to petitioner's fourth assignment of error, in which he argues that the testimony of Gerald R. was so prejudicial that the circuit court had no choice but to declare a mistrial. A mistrial is granted only if there is a "manifest necessity for discharging the jury prior to rendering its verdict." *State v. Williams*, 172 W.Va. 295 at 304, 305 S.E.2d 251 at 260 (1983). "'The determination of whether "'manifest necessity' that will justify ordering a mistrial over a defendant's objection exists is a matter within the discretion of the trial court, to be exercised according to the particular circumstances of each case.' Syllabus Point 3, *Porter v. Ferguson*, 174 W.Va. 253, 324 S.E.2d 397 (1984)." Syl. Pt. 4, *State v. Smith*, 225 W. Va. 706, 707, 696 S.E.2d 8, 9 (2010).

We believe that the error flowing from Gerald R.'s prohibited testimony was sufficiently cured by the trial court's cautionary instruction, offered immediately upon the offense, and the circuit court did not abuse its discretion in eschewing the drastic, disfavored declaration of a mistrial. "'Ordinarily where objections to questions or evidence by a party are sustained by the trial court during the trial and the jury instructed not to consider such matter, it will not constitute reversible error.' Syl. pt. 18, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). Syl. pt. 3, *State v. Lusk*, 177 W.Va. 517, 354 S.E.2d 613 (1987)." Syllabus Point 2, *State v. Ayers*, 179 W.Va. 365, 369 S.E.2d 22 (1988). Moreover, we note that petitioner did not request a mistrial, but instead requested that the court give an instruction, which it did. This Court has stated, "[A]

6

party will not be permitted to remain silent hoping for a satisfactory verdict from the jury, and then complain when he is disappointed therein." *Legg v. Jones*, 126 W.Va. 757, 765, 30 S.E.2d 76, 80 (1944). Similarly: We disfavor the technique of not first making a timely objection to the error and instead waiting until a later time to move for a mistrial. Mistrials . . . are generally regarded as the "most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed." *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 309, 418 S.E.2d 738, 755 (1992) (internal citation omitted). Under these particular circumstances, a mistrial was not warranted.

## VI.

Finally, we address petitioner's fifth assignment of error, in which he argues that the circuit court improperly revoked his probation based on acts not alleged in the State's petition for revocation. "'When reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a de novo review.' Syl. pt. 1, *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997)." Syl. Pt. 1, *State v. Brown*, 215 W. Va. 664, 665, 600 S.E.2d 561, 562 (2004).

In short, petitioner argues that the events pertinent to Counts 4 and 5 of the indictment, for which he was tried as described above, were not listed as probation violations in the petition, but that the circuit court nevertheless relied on the testimony of W.O., the victim to whom those counts pertain, as a basis for its order of revocation. He argues that he had no notice that she would appear as a witness at the revocation hearing. With regard to the procedural protections due probationers (*see* W.Va. R.Crim. P. 32.1), we held in *Louk v. Haynes*:

> The final revocation proceeding required by the due process clause of the Fourteenth Amendment and necessitated by W.Va. Code, 62-12-10, as amended, must accord an accused with the following requisite minimal procedural protections: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a "neutral and detached" hearing officer; [and] (6) a written statement by the fact-finders as to the evidence relied upon and reasons for revocation of probation.

Syl. Pt. 12, *id.*, 159 W.Va. 482, 223 S.E.2d 780 (1976), *accord* Syl. Pt. 2, *State ex rel. Jones v. Trent*, 200 W.Va. 538, 541, 490 S.E.2d 357, 360 (1997); Syl. Pt. 3, *State v. Minor*, 176 W.Va. 92, 341 S.E.2d 838 (1986); *State ex rel. E.K.C. v. Daugherty*, 171 W.Va. 298, 299, 298 S.E.2d 834, 836 (1982). We also observe, however, that "probation is a matter of grace and not a matter of right." Syl. Pt. 1, *State v. Rose*, 156 W.Va. 342, 192 S.E.2d 884 (1972). Important to our analysis, we recognize, as well, that the standard of proof in a probation revocation hearing—by a preponderance of the evidence—does not rise to the standard of proof for a criminal

conviction. *State v. Ketchum*, 169 W.Va. 9, 12-13, 289 S.E.2d 657, 659 (1981)("Because a determination of criminal guilt is not involved, the standard of proof in a probation revocation hearing is by a clear preponderance of the evidence and not proof beyond a reasonable doubt.")

The first term of petitioner's adult probation was that he "not . . . violate any criminal law of the State of West Virginia. . . ." The petition alleged in part that petitioner violated the terms of his probation as follows:

> On September 11, 2013, the [p]robation[er] was [i]ndicted by the Hancock County Grand Jury for two (2) counts of [s]exual [a]buse by a [c]ustodian, and one [1] [c]ount of [s]exual [a]ssault in the [f]irst [d]egree. The incidents allegedly took place between June 1, 2012[,] to March 31, 2013, while he was on probation.

In its order revoking probation, the circuit court specifically noted that it relied on the testimony of W.O., and found that "while on probation, [petitioner] violated "Probation Rule 1" that was previously imposed upon him. . . ."

Inasmuch as we have found no merit in petitioner's assignments of error regarding his most recent criminal conviction as described above, we determine that this issue is moot. Petitioner was cautioned that he was to commit no crimes during his probationary period, otherwise risking revocation. It is now undisputed that petitioner is guilty of crimes that were committed during the period in question. We need consider the matter no further.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 22, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

8